# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

KIMBERLY HEFNER,          )
                                        )

      Plaintiff,         )
                                        )

      vs.               )     **Case No. 4:12CV834 LMB**
                                        )

CAROLYN W. COLVIN,[1]      )
Acting Commissioner of Social Security,  )
                                        )

      Defendant.       )

## MEMORANDUM

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision denying the application of Kimberly Hefner for Disability Insurance Benefits under Title II of the Social Security Act. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties. See 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. (Doc. No. 13). Defendant filed a Brief in Support of the Answer. (Doc. No. 18).

## Procedural History

On October 22, 2009, plaintiff filed an application for Disability Insurance Benefits, claiming that she became unable to work due to her disabling condition on July 1, 2009. (Tr. 113-19). This claim was denied initially and, following an administrative hearing, plaintiff's claim

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

was denied in a written opinion by an Administrative Law Judge (ALJ), dated December 2, 2010. (Tr. 62, 19-26). Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on April 6, 2012. (Tr. 1-3). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

## Evidence Before the ALJ

### A.     ALJ Hearing

Plaintiff's administrative hearing was held on November 8, 2010. (Tr. 29). Plaintiff was present and was represented by counsel. (Id.). Also present was vocational expert Jeffrey Magrowski. (Id.).

Plaintiff's attorney made an opening statement, in which he indicated that plaintiff has been diagnosed with multiple sclerosis ("MS"),[2] chronic migraines, depression, and degenerative disc disease[3] in the lower back. (Tr. 32). Plaintiff's attorney stated that plaintiff is capable of less than sedentary work, although plaintiff was not arguing that a listing is met. (Id.).

The ALJ examined plaintiff, who testified that she was forty-five years of age. (Tr. 33). Plaintiff stated that she was five-feet, three-inches tall, and weighed 172 pounds. (Id.). Plaintiff testified that her weight fluctuates due to her medication. (Id.).

---

[2]A common demyelinating disorder of the central nervous system, causing patches of sclerosis (plaques) in the brain and spinal cord. Typical symptoms include visual loss, speech disorders, weakness, paresthesias, bladder abnormalities, and mood alterations. Stedman's Medical Dictionary, 1733 (28th Ed. 2006).

[3]A general term for both acute and chronic processes destroying the normal structure and function of the intervertebral discs. See J. Stanley McQuade, Medical Information Systems for Lawyers, § 6:201 (1993).

Plaintiff stated that she stopped working in January 2009. (Tr. 35). Plaintiff testified that she owned businesses with her husband at that time, American Family Home Sales and Hefner Mobile Home Service. (Id.). Plaintiff stated that she did the quarterly taxes and payroll for the businesses. (Id.). Plaintiff testified that her husband took over the businesses when she was no longer able to work. (Id.). Plaintiff stated that she started the business in 2007, and that her husband still owned the businesses at the time of the hearing. (Id.).

Plaintiff testified that, prior to starting the businesses, she worked as a bookkeeper for a photo company for thirteen years. (Tr. 36-37). Plaintiff stated that she was laid off from this position. (Tr. 37).

Plaintiff testified that she was unable to work at the time of the hearing due to fatigue, confusion, memory loss, and inability to drive. (Id.). Plaintiff stated that she had to drive forty-five minutes to get to the office when she owned her businesses. (Tr. 38).

Plaintiff testified that she experiences pain in her joints and back that radiates down her legs. (Id.). Plaintiff stated that she experiences low back pain and numbness in her legs if she sits for long periods. (Id.). Plaintiff testified that she has fallen on a couple occasions. (Tr. 39). Plaintiff stated that she starts to experience pain after sitting for twenty minutes, and that the pain continues to increase. (Id.). Plaintiff testified that she has taken muscle relaxers for her pain, but they were not effective. (Id.).

Plaintiff stated that Dr. Payne is her neurologist, Dr. Normile is her primary care physician, and Dr. Anderson is her psychologist. (Id.). Plaintiff testified that her current medications

include Topamax,[4] Propranolol,[5] Diclofenac,[6] Zoloft,[7] Rebif injections,[8] Provigil,[9] Ritalin,[10] and Relpax.[11]  (Tr. 40-41).

Plaintiff testified that she experiences migraines about once a week, which last all day and occasionally last until the next day.  (Tr. 42).  Plaintiff stated that she had been experiencing migraines since she was in high school.  (Id.).  Plaintiff stated she experiences extreme pain in her head and eyes, and must lie down in a dark room when she experiences a migraine.  (Id.).

Plaintiff testified that her medications sometimes appear to work, but she is on so much medication that it is difficult to determine whether they are effective.  (Id.).  Plaintiff stated that it is also difficult to determine whether she experiences side effects from her medications or if the symptoms are caused by her MS.  (Tr. 43).  Plaintiff stated that she becomes sick to her stomach if she stops taking any of her medications.  (Id.).

---

[4]Topamax is indicated for the treatment of migraine headaches.  See WebMD, http://www.webmd.com/drugs (last visited July 18, 2013).

[5]Propanolol is indicated for the treatment of high blood pressure.  See WebMD, http://www.webmd.com/drugs (last visited July 18, 2013).

[6]Diclofenac is a non-steroidal anti-inflammatory drug indicated for the treatment of osteoarthritis.  See Physician's Desk Reference (PDR), 2334 (63rd Ed. 2009).

[7]Zoloft is indicated for the treatment of depression.  See WebMD, http://www.webmd.com/drugs (last visited July 18, 2013).

[8]Rebif is indicated for the treatment of multiple sclerosis.  See PDR at 1108.

[9]Provigil is indicated to improve wakefulness in patients with excessive sleepiness.  See PDR at 979.

[10]Ritalin is indicated for the treatment of ADHD.  See WebMD, http://www.webmd.com/drugs (last visited July 18, 2013).

[11]Relpax is indicated for the treatment of migraines.  See WebMD, http://www.webmd.com/drugs (last visited July 18, 2013).

Plaintiff testified that none of her doctors have recommended surgery. (Id.). Plaintiff stated that she has tried physical therapy, which caused muscle spasms. (Id.). Plaintiff testified that she has also tried acupuncture and chiropractic, which were ineffective. (Id.).

Plaintiff stated that she has difficulty with her vision. (Tr. 44). Plaintiff testified that she recently underwent testing, which reveled the vision in her right eye was decreasing. (Id.). Plaintiff stated that her hearing has also decreased somewhat. (Id.).

Plaintiff testified that she has significant memory loss. (Id.). Plaintiff stated that she has forgotten events in her life, such as the fact that she was her niece's godmother. (Id.).

Plaintiff testified that her legs become weak and tired after standing for long periods. (Tr. 47). Plaintiff stated that she never tries to walk any distances. (Id.).

Plaintiff testified that she has difficulty with concentration. (Id.). Plaintiff stated that she is unable to focus, and she forgets how to complete tasks due to her memory loss. (Tr. 48). Plaintiff testified that she is able to watch a whole television program or movie, but she often forgets pieces of it. (Id.).

Plaintiff stated that she uses a computer and she has an email address and a Facebook account. (Id.). Plaintiff testified that she checks her email once or twice a day, and she uses Facebook about twice a week. (Id.). Plaintiff stated that she only uses Facebook to check on her daughter. (Id.).

Plaintiff testified that she has difficulty dealing with people because she loses her patience frequently. (Tr. 48-49).

Plaintiff stated that, on a typical day, she stays at home while her husband works and does not engage in much activity. (Tr. 49). Plaintiff testified that she tries to move around because she

is unable to sit for long periods. (Id.). Plaintiff stated that she has difficulty sleeping, and that she takes sleeping pills and a muscle relaxer at night to help her sleep. (Id.). Plaintiff testified that she has difficulty taking showers because it is uncomfortable on her legs. (Id.).

Plaintiff stated that she lives with her husband and her nineteen-year-old daughter. (Id.). Plaintiff testified that she does not do much housework. (Id.). Plaintiff stated that her husband and daughter start the laundry and carry it to her and she folds it. (Id.). Plaintiff testified that she does not cook. (Tr. 50). Plaintiff stated that she does not shop, other than going to Wal-Mart to pick up a few items. (Id.).

Plaintiff testified that she has a driver's license, and that she drives occasionally. (Id.). Plaintiff stated that the farthest she drives is to the family's business, which is a forty-minute drive. (Id.). Plaintiff testified that she drives to the business about once a week. (Id.).

Plaintiff's attorney next examined plaintiff, who testified that she has been experiencing increased fatigue, and that her Provigil was increased for this reason. (Tr. 51). Plaintiff stated that the medication adjustment has not worked yet, although her doctor indicated it would take a while. (Id.). Plaintiff testified that she wakes up feeling tired, and that she takes naps during the day about four times a week. (Id.). Plaintiff stated that she naps for about one-and-a-half hours. (Id.).

Plaintiff testified that she does not do any work when she goes to the family business. (Tr. 52). Plaintiff stated that she just goes to get out of the house. (Id.). Plaintiff testified that there is a couch at the office, and that she sits down and rests when she gets tired. (Id.).

Plaintiff stated that her migraines have consistently gotten worse over the years. (Id.). Plaintiff testified that her doctors do not know whether the migraines are caused by the MS.

(Id.).

Plaintiff stated that she has been diagnosed with degenerative disc disease in the lower back. (Id.). Plaintiff testified that her doctors have recommended pain management, and that she had an appointment scheduled later in the week. (Tr. 53).

Plaintiff stated that she experiences depression. (Id.). Plaintiff testified that she has difficulty concentrating, she loses patience with people, she does not go anywhere, and she does not do anything. (Id.). Plaintiff stated that she used to enjoy playing pool in a league with her husband, but she has not done this in three-and-a-half to four years. (Id.). Plaintiff testified that she also used to enjoy entertaining friends and having people over to swim, but she has not done this in two to three years. (Id.). Plaintiff stated that she has not swum in her pool for over two years. (Tr. 54).

Plaintiff testified that she was experiencing tightness in her lower back due to sitting for about forty minutes during the hearing. (Id.). Plaintiff stated that she had taken a muscle relaxer before the hearing. (Id.).

Plaintiff testified that she is able to stand in one position for about forty-five minutes, and stand while changing positions for about one hour. (Id.).

The ALJ re-examined plaintiff, who testified that she has not gone swimming because she has separated herself from her family, and she does not do much of anything anymore. (Tr. 55).

The ALJ then examined the vocational expert, Dr. Magrowski, who testified that plaintiff's past work was classified as accounting clerk (sedentary, skilled); photo lab worker (light, semi-skilled); and small business manager (light, skilled). (Tr. 57-58). Dr. Magrowski stated that plaintiff has developed the following skills that were transferable: math, bookkeeping,

office skills, writing letters, keeping records, operating equipment, sales skills, negotiating prices, dealing with the public, running a business, schedule work, handling complaints, and taking inventory. (Tr. 58).

The ALJ asked Dr. Magrowki to assume a hypothetical claimant with plaintiff's background and the following limitations: capable of performing sedentary work, requires a sit/stand option every forty-five minutes but does not need to leave the workstation, no exposure to hazards, and no balancing. (Tr. 59). Dr. Magrowski testified that the individual could perform plaintiff's accounting clerk work. (Id.).

The ALJ next asked Dr. Magrowski to assume the same limitations as the first hypothetical, but the individual would miss one day of work each month. (Id.). Dr. Magrowski testified that the individual would likely eventually be terminated for absenteeism. (Id.). Dr. Magrowski stated that he was unaware of any position for which the individual would be able to complete a trial period with this limitation. (Id.).

Plaintiff's attorney asked Dr. Magrowski to assume the limitations found by Dr. Pan, specifically the limitation of working no more than five hours per day. (Tr. 60). Dr. Magrowski testified that this would be less than full time work. (Id.).

**B.    Relevant Medical Records**

Plaintiff presented to Christopher Normile, M.D., on May 27, 2009, at which time Dr. Normile stated that plaintiff had not been taking any MS medications and was asymptomatic neurologically. (Tr. 453). Plaintiff also reported that her headaches had been reasonably well-controlled. (Id.).

Plaintiff saw Dr. Normile on August 11, 2009, for complaints of edema, back pain, and

migraines. (Tr. 454). Plaintiff had discontinued the Topamax and her headaches had worsened. (Id.). Plaintiff reported increased back pain due to sitting at a desk most of the day without getting up to stretch. (Id.). Upon examination, Dr. Normile noted some edema of the extremities, and painful but full range of motion of the lumbar spine. (Id.). Dr. Normile's assessment was back pain, edema, and migraine headaches. (Id.). Dr. Normile resumed plaintiff's Topamax and started Soma[12] for her back pain. (Id.).

Plaintiff presented to neurologist Min Pan, M.D. on September 28, 2009, with complaints of MS, headaches, and back pain. (Tr. 315). Dr. Pan indicated that plaintiff had been diagnosed with MS in 1998, after an MRI of the brain and spinal tap were positive. (Id.). Plaintiff had been taking Rebif, but it was discontinued in February 2007, and plaintiff denied major exacerbation. (Id.). Plaintiff reported symptoms of memory loss, fatigue, spasticity, and numbing and tingling sensation intermittently. (Id.). Plaintiff had last undergone an MRI of the brain over two years prior. (Id.). Upon neurological examination, Dr. Pan noted plaintiff was oriented, her speech was clear and coherent, her cranial nerves were normal, she had normal muscle tone and bulk, full strength in all extremities, normal sensory examination, normal coordination, and normal tandem walk. (Tr. 316). Dr. Pan stated that plaintiff's back pain could be related to degenerative joint disease.[13] (Id.). Dr. Pan indicated that plaintiff wanted to restart Rebif. (Id.). Dr. Pan prescribed Provigil for plaintiff's chronic fatigue, adjusted her dosage of Topamax to relieve symptoms of

---

[12]Soma is indicated for the treatment of discomfort associated with acute, painful musculoskeletal conditions. See PDR at 1931.

[13]Degenerative joint disease, or osteoarthritis, is arthritis characterized by erosion of articular cartilage, either primary or secondary to trauma or other conditions, which becomes soft, frayed, and thinned with eburnation of subchondral bone and outgrowths of marginal osteophytes; pain and loss of function result; mainly affects weight-bearing joints. Stedman's at 1388.

fatigue, and ordered an MRI of the brain. (Id.).

On October 1, 2009, plaintiff underwent an MRI of the brain, which revealed findings consistent with plaintiff's history of MS. (Tr. 318). Plaintiff also underwent an MRI of the lumbar spine, which revealed degenerative disc disease at L5-S1 with a small right paracentral disc herniation that did not appear to cause significant impression upon or compression of the thecal sac or S1 nerve root. (Tr. 320).

Plaintiff saw Dr. Normile on October 16, 2009, at which time she reported worsening of her depressive symptoms while taking Pristiq. (Tr. 455). Plaintiff complained of lack of energy during the day and insomnia at night. (Id.). Upon examination, plaintiff's mood and affect were depressed; her speech, behavior and thought content were normal; and she was intact neurologically. (Id.). Dr. Normile's assessment was major depression. (Id.). Dr. Normile discontinued the Pristiq, started Wellbutrin,[14] and referred her to Dr. Anderson for a psychiatric consultation. (Id.). On November 2, 2009, plaintiff reported that she was not tolerating the Wellbutrin, she was experiencing dizziness and nausea since trying to wean off of the Pristiq, and she was experiencing worsening depressive symptoms. (Tr. 456). Upon examination, plaintiff's mood and affect were mildly depressed; her speech, behavior, and thought content were normal; and her neurologic was grossly intact. (Tr. 457). Dr. Normile indicated that plaintiff had scheduled an appointment with Dr. Anderson. (Id.).

State agency psychologist Kyle DeVore, Ph.D., completed a Psychiatric Review Technique on December 15, 2009, in which he expressed the opinion that plaintiff's depression

---

[14]Wellbutrin is indicated for the treatment of major depressive disorder. See PDR at 1649.

was non-severe, and caused only mild limitations in plaintiff's activities of daily living, ability to maintain social functioning, and ability to maintain concentration, persistence, or pace. (Tr. 390-401). Dr. DeVore stated that plaintiff indicated that her depression is linked to her diagnosis of MS, and that she still handles her activities of daily living and day-to-day affairs. (Tr. 400). Plaintiff reported that she was not seeing a mental health professional, although she had an appointment scheduled with a psychiatrist for later that month. (Id.). Plaintiff also reported that she helps her husband with their business and goes to the office several times a week. (Id.).

Plaintiff presented to Dr. Pan for follow-up on December 16, 2009, at which time Dr. Pan stated that plaintiff had a history of relapsing/remitting MS and chronic headaches. (Tr. 376). Dr. Pan stated that Rebif was restarted at plaintiff's last visit and plaintiff was able to tolerate it well. (Id.). Plaintiff complained of frequent headaches. (Id.). Upon examination, plaintiff's speech was clear, she had full motor strength, normal deep tendon reflexes, and normal tandem walk. (Id.). Dr. Pan's impression was relapsing/remitting MS, clinically stable; and chronic headaches likely mixed migraine tension headaches. (Id.). Dr. Pan continued the Rebif and Topamax, discontinued the Provigil and Ritalin, and started plaintiff on Nortriptyline[15] for preventative treatment of her headaches. (Tr. 377).

Plaintiff saw psychiatrist Richard Anderson, M.D., Ph.D. on December 23, 2009, at which time she complained of depression and anxiety. (Tr. 387). Plaintiff reported that she owned her own company selling modular homes. (Id.). On February 10, 2010, plaintiff reported that she did not notice any improvement with medication. (Tr. 386-87).

_____

[15]Nortriptyline is indicated for the treatment of mood disorders such as depression. See WebMD, http://www.webmd.com/drugs (last visited July 18, 2013).

Plaintiff saw Dr. Normile on April 8, 2010, at which time Dr. Normile stated that plaintiff had been seeing Dr. Anderson and Dr. Pain and her medications have increased significantly. (Tr. 459). Plaintiff indicated that she was interested in trying to reduce her medication list. (Id.). Plaintiff complained of low back and leg pain attributed to the MS, swelling in her hands and feet, and cold hands, nose and feet. (Id.). Dr. Normile noted no abnormalities on examination. (Id.).

Dr. Pan completed a Medical Source Statement on May 7, 2010, in which she expressed the opinion that plaintiff was able to frequently lift five pounds or less, and occasionally lift six to ten pounds; stand or walk a total of two hours during an eight-hour workday, and continuously for thirty minutes; sit a total of three hours per eight-hour workday, and continuously for one hour; and push or pull for a total of two hours per eight-hour workday, and continuously for one hour. (Tr. 388). Dr. Pan found that plaintiff should assume a reclining position for five minutes two times per day. (Id.). Dr. Pan indicated that plaintiff could frequently finger; occasionally bend, kneel, reach, handle, and be exposed to fumes and vibration; and never be exposed to heights or machinery. (Tr. 389).

In an office note dated May 13, 2010, Dr. Anderson indicated that, while plaintiff's attorney had requested a narrative for her disability claim, he questioned whether his narrative would support plaintiff's disability claim. (Tr. 408).

Plaintiff saw Dr. Anderson on June 18, 2010, at which time she reported that her medication was not working. (Tr. 408). Plaintiff complained of increased irritability and mood

swings.  (Id.).  Dr. Anderson prescribed Zoloft and Lamictal.[16]  (Id.).

Plaintiff presented to Dr. Normile on July 14, 2010, with complaints of a pins and needles sensation on her scalp.  (Tr. 461).  Upon examination, Dr. Normile noted dry skin, and mild hypersensitivity in plaintiff's occipital scalp.  (Id.).  Dr. Normile's assessment was occipital neuralgia.[17]  (Id.).  Dr. Normile referred plaintiff to Dr. Pan.  (Id.).

Plaintiff saw Dr. Pan on August 10, 2010, at which time Dr. Pan noted that plaintiff had had an episode of tingling sensation of her scalp the previous month.  (Tr. 402).  Dr. Pan stated that plaintiff received steroids and Neurontin[18] and noticed seventy percent improvement of her symptoms.  (Id.).  Plaintiff had no other exacerbations.  (Id.).  Plaintiff reported that she had stopped Rebif about six weeks prior.  (Id.).  Plaintiff indicated that her headache frequency had been stable.  (Id.).  Upon examination, Dr. Pan noted that plaintiff's speech was clear, she had full motor strength, normal deep tendon reflexes, and good coordination.  (Id.).  Dr. Pan's impression was MS clinically stable, episode of tingling sensation on her scalp that could be a minor exacerbation and improved after prednisone; chronic migraine headache likely mixed migraine and tension headaches; and history of depression.  (Id.).  Dr. Pan expressed the opinion that plaintiff's depression plays a significant role for some of plaintiff's "vague neurological symptoms and her headaches."  (Id.).  Dr. Pan encouraged plaintiff to restart the Rebif injections three times a week,

---

[16]Lamictal is indicated for the treatment of seizures and for the treatment of mood swings of bipolar disorder.  See PDR at 1490.

[17]Neurological condition in which the occipital nerves, which run from the top of the spinal cord at the base of the neck up through the scalp, are inflamed or injured, resulting in head or neck pain.  See Stedman's at 1307.

[18]Neurontin is indicated for the treatment of seizures, and nerve pain.  See WebMD, http://www.webmd.com/drugs (last visited July 18, 2013).

and continued her other medications.  (Tr. 403).

Plaintiff presented to Dr. Normile on September 14, 2010, at which time she complained of daily headaches.  (Tr. 462).  Upon examination, Dr. Normile noted mild temporal and frontal tenderness.  (Id.).  Dr. Normile diagnosed plaintiff with migraine and rebound headache.  (Tr. 463).  He discontinued Soma.  (Id.).

Plaintiff presented to Dr. Normile on October 6, 2010, with complaints of low back pain for two weeks.  (Tr. 480).  Upon examination, plaintiff appeared to be in mild to moderate pain, and had an antalgic gait; no tenderness was noted in the lumbosacral spine area; painful and reduced lumbosacral range of motion was noted; plaintiff's straight leg raise test was negative; and plaintiff's motor strength and sensation were normal.  (Id.).  Dr. Normile prescribed Vicodin[19] and recommended that plaintiff follow-up with her neurologist.  (Tr. 481).

Plaintiff presented to Dr. Pan on October 6, 2010, at which time plaintiff complained of increased blurred vision, headaches, fatigue, and lower back pain.  (Tr. 448).  Dr. Pan indicated that plaintiff underwent testing due to her visual complaints, which revealed findings consistent with the diagnosis of optic nerve involvement from MS.  (Id.).  Dr. Pan noted that plaintiff had recently had her psychiatric medications adjusted by Dr. Anderson.  (Id.).  Upon examination, plaintiff's speech was clear, she had almost full strength, normal deep tendon reflexes, and good coordination.  (Id.).  Dr. Pan stated that plaintiff's symptoms are likely multifactorial, which could be related to minor exacerbation from MS and increased depression symptoms.  (Id.).  Dr. Pan stated that plaintiff's back pain was likely from degenerative joint disease and a small herniated

_____

[19]Vicodin is a narcotic analgesic indicated for the relief of moderate to moderately severe pain.  See PDR at 532.

disc.  (Id.).  Dr. Pan also diagnosed plaintiff with depression and chronic headaches.  (Id.).  Dr.

Pan increased plaintiff's Provigil and nortriptyline, and referred plaintiff to physical therapy for her

lumbar radiculopathy.[20]  (Tr. 449).

Plaintiff also saw Dr. Anderson on October 6, 2010, at which time she reported that she

did not think the Zoloft was working.  (Tr. 447).  Dr. Anderson increased plaintiff's dosage of

Zoloft.  (Id.).

Plaintiff attended four physical therapy appointments for her lower back and leg pain in

October 2010.  (Tr. 485-86).

## The ALJ's Determination

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since July 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease, multiple sclerosis, and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she must have a sit-stand option every 45 minutes, but does not need to leave the workstation, must avoid exposure to hazards, and is limited to jobs that do not require balancing.

6. The claimant is capable of performing past relevant work as an accounting clerk. This work does not require the performance of work-related activities precluded

---

[20]Disorder of the spinal nerve roots.  Stedman's at 1622.

by the claimants residual functional capacity (20 CFR 404.1565).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2009, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 21-26).

The ALJ's final decision reads as follows:

Based on the application for a period of disability and disability insurance benefits filed on October 22, 2009, the claimant is not disabled under sections 216(I) and 223(d) of the Social Security Act.

(Tr. 26).

## Discussion

### A.     Standard of Review

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency.  See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996).  The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it.  See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000).  Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.  See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998).  If, after review, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the denial of benefits must be upheld.  See Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).  The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision.  See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)(citing Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)).  "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing

test to evidence which is contrary." Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998). The analysis required has been described as a "searching inquiry." Id.

**B.    Determination of Disability**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416 (I)(1)(a); U.S.C. § 423 (d)(1)(a). The claimant has the burden of proving that s/he has a disabling impairment. See Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled. See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998). First, it is determined whether the claimant is currently engaged in "substantial gainful employment." If the claimant is, disability benefits must be denied. See 20 C.F.R. §§ 404.1520, 416.920 (b). Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments. See 20 C.F.R §§ 404.1520 (c), 416.920 (c). To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities." Id. Age, education and work experience of a claimant are not considered in making the "severity" determination. See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). This listing is found in

Appendix One to 20 C.F.R. 404. 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired. <u>See</u> 20 C.F.R. §§ 404.1520 (d), 416.920 (d). If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his or her past work. <u>See</u> 20 C.F.R. § 404.1520 (e), 416.920 (e). If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled. <u>See id.</u> If the claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. <u>See</u> 20 C.F.R. §§ 404.1520 (f), 416.920 (f). The claimant is entitled to disability benefits only if s/he is not able to perform any other work. <u>See id.</u> Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work. <u>See</u> <u>Beckley v. Apfel</u>, 152 F.3d 1056, 1059 (8th Cir. 1998).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. <u>See</u> 20 C.F.R. §§ 404.1520a (b) (1), 416.920a (b) (1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a (b) (2), 416.920a (b) (2). The Commissioner must then rate the degree

of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. See 20 C.F.R. §§ 404.1520a (b) (3), 416.920a (b) (3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. See id. Next, the Commissioner must determine the severity of the impairment based on those ratings. See 20 C.F.R. §§ 404.1520a (c), 416.920a (c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. See 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. See id. If there is a severe impairment but the impairment does not meet or equal the listings, then the Commissioner must prepare a residual functional capacity assessment. See 20 C.F.R. §§ 404.1520a (c)(3), 416.920a (c)(3).

**C.**    **Plaintiff's Claims**

Plaintiff first argues that the ALJ erred in evaluating the opinion of treating physician Dr. Pan. Plaintiff next argues that new evidence from Dr. Pan warrants reversal. Plaintiff finally argues that a recent favorable decision demonstrates that plaintiff is disabled. The undersigned will discuss plaintiff's claims in turn.

**1.**    **Dr. Pan's Opinion**

Plaintiff argues that the ALJ failed to comply with 20 C.F.R. § 404.1527 in assigning less than adequate weight to the opinion of treating physician Dr. Pan.

 "A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in [a claimant's] case record.'" Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). However, "[w]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight." Halverson v. Astrue, 600 F.3d 922, 929-30 (8th Cir. 2010) (internal quotation marks omitted).

"'When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so.'" Martise v. Astrue, 641 F.3d 909, 925 (8th Cir. 2011) (quoting Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007)). When an opinion is not given controlling weight as the opinion of a treating source, the weight given to the opinion depends on a number of factors, including whether the source has examined the claimant, the nature and extent of the treatment relationship, the relevant evidence provided in support of the opinion, the consistency of the opinion with the record as a whole, whether the opinion is related to the source's area of specialty, and other factors. 20 C.F.R. §§ 404.1527(c).

Dr. Pan completed a Medical Source Statement on May 7, 2010, in which she expressed the opinion that plaintiff was able to frequently lift five pounds or less, occasionally lift six to ten pounds, stand or walk a total of two hours during an eight-hour workday and continuously for thirty minutes, sit a total of three hours per eight-hour workday and continuously for one hour, push or pull for a total of two hours per eight-hour workday and continuously for one hour. (Tr. 388). Dr. Pan found that plaintiff should assume a reclining position for five minutes two times per day. (Id.). Dr. Pan also indicated that plaintiff could frequently finger; occasionally bend, kneel, reach, handle, and be exposed to fumes and vibration; and never be exposed to heights or machinery. (Tr. 389).

The ALJ found that Dr. Pan's opinion, specifically Dr. Pan's finding that plaintiff was limited to working only five hours per day, was not linked to any medical evidence. (Tr. 24). The ALJ

stated that Dr. Pan "builds no evidentiary bridge between [her] medical findings (as opposed to simply a diagnosis) and a particular work related limitation," and that Dr. Pan's "conclusions are not supported by the actual medical findings of mostly normal strength, sensory, etc. with only mild to moderate medical findings (subjective complaints of pain, diminished range of motion and tenderness in some muscles/joints)." (Tr. 24-25). The ALJ stated that, because Dr. Pan's assessment is not supported by her own treatment notes, or any other evidence of record, it cannot be given significant weight. (Tr. 25).

The undersigned finds that the ALJ gave legally sufficient reasons for his decision to grant little weight to Dr. Pan's opinion, and that his decision to do so was supported by substantial evidence. First, as the ALJ properly noted, Dr. Pan cites no medical evidence in support of her findings. (Tr. 24, 388-89). Rather, Dr. Pan completed a pre-printed check list provided to her by plaintiff's attorney, which contained no indication of the objective medical evidence supporting the findings. (Tr. 388-89). See Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) (finding that an ALJ properly discounted an opinion in part because it was conclusory, consisted of checklist forms, cited no medical evidence, and provided little to no elaboration); Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) (noting that the checklist format of an RFC assessment limited its evidentiary value); SSR 06-03p (noting that the factors to be considered in weighing an opinion include "the degree to which the source presents relevant evidence to support an opinion" and "how well the source explains the opinion").

Second, Dr. Pan's own treatment notes do not lend support to her opinions. On plaintiff's initial visit in September 2009, plaintiff had discontinued Rebif in February 2007, and denied major exacerbation. (Tr. 315). Upon examination, Dr. Pan noted plaintiff was oriented, her speech was

clear and coherent, her cranial nerves were normal, her muscle tone and bulk were normal, she had full strength in all extremities, her sensory examination was normal, her coordination was normal, and her tandem walk was normal. (Tr. 316). At plaintiff's next visit in December 2009, Dr. Pan indicated that the Rebif was re-started and plaintiff was able to tolerate it well. (Tr. 376). Upon examination, plaintiff's speech was clear, she had full motor strength, normal deep tendon reflexes, and normal tandem walk. (Id.). Dr. Pan found that plaintiff's MS was "clinically stable." (Id.). In August 2010, after Dr. Pan provided her May 2010 medical source statement, Dr. Pan noted that plaintiff had experienced an episode of a tingling sensation of her scalp the previous month, which had resolved with medication. (Tr. 402). Plaintiff reported no other exacerbations. (Id.). On examination, Dr. Pan noted that plaintiff's speech was clear, she had full motor strength, normal deep tenon reflexes, and good coordination. (Id.). Dr. Pan again diagnosed plaintiff with clinically stable MS, and noted that her episode of a tingling sensation in her scalp could be a minor exacerbation. (Id.). In October 2010, plaintiff complained of increased blurred vision, headaches, fatigue, and lower back pan. (Tr. 448). Dr. Pan noted that testing revealed findings consistent with optic nerve involvement from MS. (Id.). Upon examination, plaintiff's speech was clear, she had almost full motor strength, normal deep tendon reflexes, and good coordination. (Id.). Dr. Pan found that plaintiff's complaints were "multifactorial," and could be related to minor exacerbation from MS and increased depression symptoms. (Id.).

Dr. Pan's treatment notes reveal that plaintiff's physical examinations were essentially normal. On plaintiff's initial visit, approximately eight months prior to the time Dr. Pan authored her opinion, plaintiff had stopped taking her MS medication and reported no exacerbation of symptoms. (Tr. 315). In December 2009, the last visit prior to Dr. Pan's medical source statement, Dr. Pan found

that plaintiff's MS was clinically stable. (Tr. 376). Dr. Pan's treatment notes dated after she provided her opinion also do not support her opinion, as they note only minor exacerbations. Dr. Pan's diagnosis in August 2010 remained clinically stable MS, despite an episode of minor exacerbation. (Tr. 402).

The other medical evidence of record is also inconsistent with Dr. Pan's opinion. In May 2009, less than two months prior to plaintiff's alleged onset of disability date, plaintiff's treating primary care physician, Dr. Normile, noted that plaintiff had not been taking any MS medications and was asymptomatic neurologically. (Tr. 453). Plaintiff also reported that her headaches had been reasonably well-controlled. (Id.). In August 2009, after plaintiff's alleged onset of disability date, plaintiff reported increased back pain due to sitting at a desk most of the day without stretching. (Tr. 454). Upon examination, Dr. Normile noted some edema of the extremities, but full range of motion of the lumbar spine. (Id.). In October 2009 and November 2009, plaintiff reported symptoms of depression including lack of energy and insomnia. (Tr. 455, 456). Upon examination, plaintiff was intact neurologically. (Id.). Plaintiff was referred to psychiatrist Dr. Anderson in December 2009 for complaints of depression, at which time she reported that she owned her own company selling modular homes. (Tr. 387). In April 2010, plaintiff presented to Dr. Normile with complaints of low back and leg pain, swelling in her hands and feet, and cold hands, nose and feet. (Tr. 459). Dr. Normile, however, noted no abnormalities on examination. (Id.). In September 2010, plaintiff complained of headaches. (Tr. 462). Dr. Normile noted mild temporal and frontal tenderness, and diagnosed plaintiff with migraine and rebound headache. (Tr. 463). In October 2010, plaintiff complained of low back pain. (Tr. 480). On examination, Dr. Normile noted reduced lumbosaral

range of motion, but no tenderness, negative straight leg raise test, and normal motor strength and sensation. (Id.). This evidence does not support the significant limitations found by Dr. Pan.

In sum, the ALJ was not required to give weight to Dr. Pan's opinions that were unsupported by her own treatment notes, and were inconsistent with her treatment notes and other substantial evidence in the record. See Juszcyk v. Astrue, 542 F.3d 626, 632 (8th Cir. 2008) ("ALJs are not obliged to defer to treating physician's medical opinions unless they are 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record.'") (quoting Ellis v. Barnhart, 392 F.3d 988, 995 (8th Cir. 2005)); Wildman, 596 F.3d at 964 (finding that the ALJ properly discounted a treating physician's opinion that was conclusory, cited no medical evidence, and provided little to no elaboration); Davidson v. Astrue, 578 F.3d 838, 843 (8th Cir. 2009) (stating, "It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes," and affirming the ALJ's decision in part because the treating physician's treatment notes "contain[ed] few indications of the total disability [the doctor would later] attribute to [the plaintiff].").

The ALJ found that plaintiff had the RFC to perform sedentary work, with a sit-stand option every forty-five minutes, must avoid exposure to hazards, and is limited to jobs that do not require balancing. (Tr. 23). It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of her limitations. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001) (quoting Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). A claimant's RFC is what he or she can do despite his or her limitations. 20 C.F.R. § 404.1545. It is the claimant's burden, and not the Social Security Commissioner's burden to prove the claimant's RFC. Pearsall, 274 F.3d at 1218.

Substantial evidence exists in the record to support the ALJ's RFC determination. In determining plaintiff's RFC, the ALJ considered the medical evidence of record, including the opinion of Dr. Pan. The ALJ also performed a proper credibility analysis and found that plaintiff's allegations were not entirely credible. The ALJ pointed out that the objective medical evidence did not support the presence of a disabling impairment, and noted that there was evidence in the record suggesting that plaintiff continued to work after her alleged onset of disability date. Thus, the ALJ's determination that plaintiff was capable of performing a limited range of sedentary work is supported by substantial evidence in the record as a whole.

## 2.     New Evidence

Plaintiff next argues that new evidence from Dr. Pan warrants reversal. Plaintiff also contends that a recent favorable decision demonstrates that plaintiff is disabled.

The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision. 20 C.F.R. § 404.970(b); Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000). Additional evidence submitted to the Appeals Council is material when it is "relevant to the claimant's condition for the time period for which benefits were denied." Lamp v. Astrue, 531 F.3d 629, 632 (8th Cir. 2008) (quoting Bergmann v. Apfel, 207 F.3d 1065, 1069 (8th Cir. 2000)). The newly submitted evidence becomes part of the administrative record, even though the evidence was not originally included in the ALJ's record. Cunningham, 222 F.3d at 500. This Court does not review the Appeal Council's denial but determines whether the record as a whole, including the new evidence, supports the ALJ's determination. Cunningham, 222 F.3d at 500.

In this case, plaintiff has attached a Residual Functional Capacity form completed by Dr. Pan on August 12, 2011, treatments notes of Dr. Pan dated June 6, 2011, and records from St. Joseph Health Center from June 2011. Pl's Ex. A. Plaintiff submitted this evidence to the Appeals Council. (Tr. 1-5). The Appeals Council noted that the ALJ decided plaintiff's case through December 2, 2010, and that the new evidence relates to a later time. (Tr. 2). The Appeals Council stated that the new evidence does not affect the ALJ's decision regarding whether plaintiff was disabled before December 2, 2010. (Id.). The Appeals Council returned the evidence to plaintiff, and advised her she could file a subsequent application for benefits and use the evidence in her new claim. (Id.).

The undersigned finds that the new evidence does not relate to the period prior to the ALJ's decision, and does not, therefore, provided a basis for remand or reversal.

Plaintiff also contends that a recent favorable determination on a subsequent application that plaintiff has attached to her brief as Exhibit B "shows that with consideration of all the evidence SSA agrees Kimberly is disabled." (Doc. No. 13).

The undersigned has reviewed the decision granting plaintiff's subsequent application for benefits, and finds that it does not affect the decision of the ALJ in the instant case. The subsequent decision was based on a significant amount of new medical evidence that does not relate to the period considered by the ALJ in the current application. See Allen v. Commissioner of Social Security, 561 F.3d 646, 654 (6th Cir. 2009) (remand not warranted on the basis of subsequent grant of benefits, by itself, because the subsequent grant of benefits may be based upon a worsening of the claimant's condition, or some other change).

**Conclusion**

Substantial evidence in the record as a whole supports the decision of the ALJ finding plaintiff not disabled because the evidence of record does not support the presence of a disabling impairment. Accordingly, Judgment will be entered separately in favor of defendant in accordance with this Memorandum.

Dated this __19th__ day of August, 2013.

*Lewis M. Blanton*
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE